Florane M. REEVES, Plaintiff,

v.

**TRANSPORT DATA COMMUNICATIONS, INC., a Delaware corporation, et al., Defendants.**

Court of Chancery of Delaware, New Castle.

March 29, 1974.

Donald W. Booker, of Booker, Green, Shaffer, Berl & Wise, Wilmington, for plaintiff.

Bernard A. Van Ogtrop, and David N. Williams, of Cooch & Taylor, Wilmington, for defendants.

BROWN, Vice Chancellor.

Plaintiff, a present stockholder of the Defendant Transport Data Communications, Inc. (hereafter "Transport Data"), has filed suit "individually and derivatively in behalf of and for the benefit of" the corporation. She has named the directors of the corporation as individual Defendants. Defendants have moved to dismiss for lack of jurisdiction on the grounds that the complaint demonstrates that Plaintiff has an adequate remedy at law.

The facts alleged are basically as follows. On December 27, 1972, the stockholders of Transport Data adopted a merger between Transport Data, the surviving corporation, and Axicom Systems, Inc. whereby each 2.35 shares of Axicom was converted into one share of Transport Data. Plaintiff was the owner of Axicom shares at the time of the merger. Prior to the merger, Axicom was a closely held corporation, its stock was not publicly traded and was thus subject to restrictions on transferability as not being registered under the Securities Act of 1933. Transport Data stock, on the other hand, was publicly traded in the over-the-counter market.

As a result of the merger, the shares of Transport Data stock exchanged for the Axicom stock contained the same restrictive legend prohibiting their transfer as did the original Axicom shares. During February 1973, written instructions were sent to all former stockholders of Axicom setting forth the procedure to be followed to have the restrictive legend removed. One requirement was that an opinion letter of counsel for the shareholder be submitted to the Secretary of Transport Data. On March 6, 1973, Plaintiff's counsel sent such a letter, and on the same date Plaintiff forwarded her stock certificate representing 1,914 shares of Transport Data to the corporate transfer agent.

By letters of March 13, March 21 and March 30, the transfer agent advised counsel for Transport Data that the approval of corporate counsel was needed in order to authorize the action requested. On April 2, 1973, corporate counsel wrote to Plaintiff requesting that she supply a "no-action" letter from the Securities and Exchange Commission together with copies of all correspondence between her and the Commission. Later, on April 16, 1973, corporate counsel wrote Plaintiff advising that they would authorize the transfer agent to issue the unrestricted shares if Plaintiff would provide them with an affidavit to the effect that there was no plan or agreement between Plaintiff and other former Axicom shareholders with respect to the sale or distribution of Transport Data stock.

Some two months later, on June 22, 1973, Plaintiff submitted such an affidavit.

On June 27 the transfer agent again wrote for the opinion of corporate counsel as to the removal of the restriction, and finally, on July 18, the transfer agent forwarded certificates to Plaintiff representing 1,774 unrestricted shares of Transport Data. Plaintiff thereafter sold these shares between July 30 and August 1 for prices between $3.50 and $3.62 per share.

Plaintiff alleges that because of the refusal of Defendants to remove the restrictions during the spring of 1973 she was prevented from selling her stock, and that as a result of the delay she suffered a total loss on the eventual sale of approximately $14,000. She further alleges that she has no adequate remedy at law and that she made no attempt through the Defendant directors to have the restriction lifted for the reason that they were involved in preventing such action.

Aside from the foregoing allegations, all of which pertain to her personal dealings, the only other element charged by Plaintiff is that during February 1973, Defendants authorized removal of the restrictive legend on 41,000 shares of Transport Data stock owned by a former director of Axicom, thus enabling him to sell them. Plaintiff also alleges that she still retains 170 shares of Transport Data stock.

By way of relief, Plaintiff asks (1) that an appraiser be appointed to determine the value of her shares as of the date of the merger or, alternatively, at the time the 41,000 shares owned by the former Axicom director were transferred; (2) that she be awarded damages based on the decrease in valuation of the stock from the date of the merger, both as to the 1,174 shares sold and the 170 shares retained; and (3) that she be awarded costs, counsel fees and such other relief as may appear proper.

Defendants take the position that this is not a true derivative action since Plaintiff in reality is seeking only monetary damages for herself, and that consequently the complaint should be dismissed since she has an adequate remedy at law for the recovery of money damages.

It is fundamental that this Court has no jurisdiction of a cause of action as to which the party seeking relief has an adequate remedy at law. 10 Del.C. § 342. Furthermore, in the words of Vice Chancellor Marvel in Hughes Tool Company v. Fawcett Publications, Inc., Del.Ch., 297 A. 2d 428, 431 (1972):

" . . . the question as to whether or not equitable jurisdiction exists is to be determined by an examination of the allegations of the complaint viewed in light of what the plaintiff really seeks to gain by bringing his cause of action . . . . "

From a review of the present complaint it is obvious that what the Plaintiff really seeks to gain by bringing this action is the difference between the value of her Transport Data stock during the spring of 1973 when she claims she desired to sell it and its value at the end of July 1973 when she actually sold it. In other words, money. In fact, that is all she seeks by her prayers: (1) a valuation of the stock at the time she feels she was entitled to it in an unrestricted status and (2) damages based on its decrease in value from that point.

A derivative action is in reality one brought by a stockholder on behalf of the corporation, not to redress a wrong done to him individually, but to obtain recovery or relief in favor of the corporation and all similar stockholders so as to compensate the corporation for some wrong done to it as a whole. Cantor v. Sachs, Del.Ch., 18 Del.Ch. 359, 162 A. 73 (1932). If the injury complained of is to the stockholder individually, and not to the corporation, then the cause of action is individual, not derivative. 3 Fletcher, Corporations § 1278, § 1282.

Plaintiff relies on the recognized principle that mismanagement which depresses

the value of stock is a wrong to the corporation, and therefore to the stockholders collectively, and thus is one which must be remedied through a derivative action. Bokat v. Getty Oil Company, Del.Supr., 262 A.2d 246 (1970). However, the complaint here does not allege factors which show mismanagement of the corporation so as to depress the value of its stock, but rather it is premised on a refusal of the corporate management to make a timely transfer and reissue to the Plaintiff of unrestricted stock which, it is claimed, deprived the Plaintiff of the opportunity to sell her shares at a considerably higher price.

At common law, if a shareholder met the requirements necessary to have stock transferred, it gave rise to an implied promise on the part of the corporation to permit the transfer, for breach of which the transferee could, among other things, maintain an action to recover damages sustained by reason of a wrongful refusal. Rothberg v. National Banner Corp., E.D. Pa., 259 F.Supp. 414 (1946); 12 Fletcher, Corporation § 5523. Along this same line, it is stated in 12 Fletcher, Corporations § 5527 at page 428 as follows:

> "In regard to the transfer of restricted stock, it has been held that the submission by a stockholder of a 'no-action' letter issued by the Securities and Exchange Commission, along with the restricted shares covered by that letter, requires the corporation and its transfer agent to transfer those shares in the absence of a valid reason for not doing so."

Presently, by statute, it is provided that where a corporation is under a duty to "register a transfer of a security" it is also liable in damages to the person presenting it for registration "for loss resulting from any unreasonable delay in registration or from failure or refusal to register the transfer". 5A Del.C. § 8–401(2). Actions which are based on a wrongful refusal to issue a stock certificate or a refusal to recognize a proper transfer of stock are examples of suits which are maintained individually by stockholders. 13 Fletcher, Corporations § 5915.

The only wrongs alleged by the Plaintiff here are the delay in transferring her stock into an unrestricted status and the transfer and issuance of unrestricted stock to another while she was waiting. There are no allegations which would support a derivative action on behalf of the corporation, and her mere assertion that she is suing derivatively does not make it one. Hughes Tool Company v. Fawcett Publications, Inc., supra.

The motion to dismiss is granted, with leave to the Plaintiff however, to move to amend the complaint pursuant to Rule 15, Del.C.Ann., if she so desires. Failure of Plaintiff to so move within ten (10) days of the date of the order entered hereon shall cause the dismissal to become effective.

Defendants are instructed to present an order, on notice.